IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SILVIA SANCHEZ-BALLESTEROS,
**Personal Representative of the Estate of A.S.,**
*et al.,*

       *Plaintiffs,*

    v.

**DAVID ALEJANDRO CANO LOPEZ,**

       *Defendant.*

Civil No.: 1:25-cv-03000-JRR

## MEMORANDUM OPINION

Pending before the court is Defendant David Alejandro Cano Lopez's Motion to Disqualify Plaintiffs' Counsel at ECF No. 27 (the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be granted.

## I.    BACKGROUND[1]

Plaintiffs Silvia Sanchez-Ballesteros, individually and as personal representative of the Estate of A.S., and Jesus Reyes-Dominguez, initiated the instant action on September 11, 2025, related to a motor vehicle accident that resulted in the tragic death of their minor child, A.S. (ECF No. 1.) On September 16, 2022, at approximately 5:30 a.m., "Plaintiffs were lawfully traveling eastbound in a 2007 Chevrolet Tahoe in the left lane of I-68 near mile marker 64 in Allegany County, Maryland." *Id.* ¶ 25. At this same time, Defendant Lopez, operating a 2012 Freightliner Cascadia, a vehicle owned by Defendant Global Xpress Logistics and/or Defendant International Logistics Trucking, was traveling "eastbound on I-68 in the right-hand

---

[1] The background relevant to the instant Motion consists of Plaintiffs' allegations and relevant procedural history, as provided by the parties in their respective papers.

lane when he negligently and violently crashed the tractor-trailer into Plaintiffs' vehicle."[2]  *Id.* ¶¶ 26–29.  Plaintiffs allege that Defendant Lopez was negligent by "fail[ing] to obey traffic laws; fail[ing] to control the speed of the vehicle to avoid a collision; fail[ing] to pay full time and attention; fail[ing] to yield the right of way; and unlawfully depart[ing] his travel lane, enter[ing] the Plaintiffs' and the Decedent's travel lane, and violently str[iking] the Plaintiffs' and the Decedents' vehicle, which caused severe and significant injuries to the Plaintiffs and the death of the Decedent."  *Id.* ¶ 30.

Plaintiffs assert five counts: negligence claims against Defendants by Plaintiff Sanchez-Ballesteros individually (Count I) and Plaintiff Reyes-Dominguez (Count II); wrongful death claims against Defendants by Plaintiff Sanchez-Ballesteros individually (Count III) and Plaintiff Reyes-Dominguez (Count IV); and a survival action alleging negligence against Defendants by Plaintiff Sanchez-Ballesteros as personal representative of the Estate of A.S. (Count V).[3]  (ECF No. 1 ¶¶ 36–152.)

Relevant here, liability for the accident is in dispute—with Plaintiffs claiming Defendant Lopez was at fault for the accident, and Defendant Lopez (and Defendants Global Xpress Logistics and International Logistics Trucking) claiming Plaintiff Reyes-Dominguez to be at fault.  (ECF Nos. 1, 7, 14, 16.)  At issue here, the Maryland State Police's September 2023 Crash Investigation Report found Plaintiff Reyes-Dominguez at fault for the accident.[4] (ECF No. 27-1 at p. 5.)

---

[2] According to Plaintiffs, Defendant Coyote Logistics, LLC, "while acting as a broker, retained Defendant Global and/or Defendant International in their capacity as motor carriers to transport the Load" that Defendant Lopez was allegedly transporting at the time of the accident.  (ECF No. 1 ¶ 20.)

[3] Plaintiffs erroneously identify their claim brought by Plaintiff Sanchez-Ballesteros as personal representation of the Estate of A.S. as "Count IV" in the Complaint.  (ECF No. 1 at p. 28.)

[4] The court includes reference to the report in this opinion solely for the purposes of the relevancy of its existence; the court does not refer to it as to, or make any findings related to, liability.

## II.    <u>LEGAL STANDARD</u>

"When confronted with a potential conflict of interest, the district court is obligated to independently determine whether the continued representation by counsel impedes the integrity of the proceedings and whether the attorney should thus be disqualified." *United States v. Williams*, 439 F. App'x 254, 256 (4th Cir. 2011) (citing *Wheat v. United States,* 486 U.S. 153, 159–160 (1988)).   Pursuant to Local Rule 704, "[t]his Court shall apply the Rules of Professional Conduct as they have been adopted by the Supreme Court of Maryland."  Local Rule 704 (D. Md. 2025).  As this court previously explained:

> A motion to disqualify is a serious matter, which must be decided on a case-by-case basis.  This is so because two significant interests are implicated by a disqualification motion: the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community. Nevertheless, the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings.  Thus, this court must not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification.

*Jarallah v. Thompson*, 123 F. Supp. 3d 719, 731 (D. Md. 2015), *aff'd*, 627 F. App'x 185 (4th Cir. 2015) (quoting *Penn Mutual Life Ins. Co. v. Berck,* No. DKC 09–0578, 2010 WL 3294309, at *3 (D. Md. Aug. 20, 2010)).

The moving party "bear[s] 'a high standard of proof to show that disqualification is warranted' because it is such a drastic measure."  *Franklin v. Clark*, 454 F. Supp. 2d 356, 364 (D. Md. 2006) (quoting *Buckley v. Airshield Corp.,* 908 F. Supp. 299, 304 (D. Md. 1995)). Disqualification "is permitted 'only where the conflict is such as clearly to call in question the fair and efficient administration of justice.'"  *Victors v. Kronmiller*, 553 F. Supp. 2d 533, 551 (D. Md. 2008) (quoting *Gross v. SES Americom, Inc.,* 307 F. Supp. 2d 719, 722–23 (D. Md. 2004) (Titus, J.)); *see also Aetna Cas. & Surety Co. v. United States,* 570 F.2d 1197, 1200–1201 (4th Cir. 1978) (requiring district court to find "an actual conflict exists," not just a

speculative conflict, before disqualifying counsel).  "Put another way, disqualification simply cannot be based on mere speculation that 'a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.'"  *Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591, 603 (E.D. Va. 2009) (quoting *Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 145 (4th Cir.1992)).

## III.  ANALYSIS

Defendant Lopez seeks to disqualify Plaintiffs' counsel from representing Plaintiffs in this action due to a purported conflict of interest arising from concurrent representation of Plaintiff Reyes-Dominguez and Plaintiff Sanchez-Ballesteros, individually and as personal representative of the Estate of A.S.

### A.  Existence of a Conflict of Interest

Rule 1.7 of the Maryland Attorneys' Rules of Professional Conduct ("MARPC 1.7") "prohibits an attorney from representing a client if the representation involves a conflict of interest."  *Att'y Grievance Comm'n of Maryland v. Singh*, 464 Md. 645, 670 (2019).  It specifically provides, in relevant part, that a conflict of interest exists where (1) "the representation of one client will be directly adverse to another client," or (2) "there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client . . . ."  MD. RULE 19-301.7(a).

On the first prong, MARPC 1.7 provides that "a conflict of interest exists in a dual representation if the parties have adverse competing interests."  *Att'y Grievance Comm'n of Maryland v. Farmer*, 484 Md. 107, 135 (2023).  On the adversity prong, comment 6 to MARPC 1.7 provides:

> [6] Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, an attorney may not act as an advocate in one matter against a person the attorney represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is

directly adverse is likely to feel betrayed, and the resulting damage to the client-attorney relationship is likely to impair the attorney's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the attorney will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the attorney's interest in retaining the current client. Similarly, a directly adverse conflict may arise when an attorney is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only economically adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest and thus may not require consent of the respective clients.

MD. RULE 19-301.7, cmt. 6.

MARPC 1.7 also "contemplates a conflict of interest when 'there is a significant risk' that the attorney will be handicapped in his representation of one client because of the attorney's duties to another client." *Att'y Grievance Comm'n of Maryland v. Woolery*, 462 Md. 209, 239 (2018). On the material limitation prong, comment 8 to MARPC 1.7 provides:

[8] Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that an attorney's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the attorney's other responsibilities or interests. For example, an attorney asked to represent several individuals seeking to form a joint venture is likely to be materially limited in the attorney's ability to recommend or advocate all possible positions that each might take because of the attorney's duty of loyalty to the others. The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the attorney's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

MD. RULE 19-301.7, cmt. 8.

Supreme Court of Maryland authority, while not on all fours, sheds light on the particular conflict concerns at issue in this case.   In the context of an attorney disciplinary action, the Supreme Court of Maryland recently addressed dual representation of a passenger and a driver in their personal injury claims arising from an automobile accident.  *Att'y Grievance Comm'n of Maryland v. King*, 491 Md. 485 (2025).  On the facts there, the court noted that the attorney agreed to represent both driver and passenger in their injury claims arising from an automobile accident.  *Id.* at 497.  "At that time, there was no discussion about an actual or potential conflict of interest," nor were the driver and passenger "presented with a written conflict waiver."  *Id.*  Counsel then notified the insurer at issue of her representation, and the insurer denied coverage on the basis that one of the clients (the driver) was contributorily negligent.  *Id.*   "Notwithstanding that assertion of [the driver's] liability, Ms. King continued to represent both [the driver] and [the passenger] . . . ."  *Id.*

In addressing the disciplinary allegations, the court reasoned: "[T]here was 'significant risk' of a conflict from the outset in representing both Ms. Watson, as the driver, and Ms. Holmes, as the injured passenger."  *Id.* at 506.  "That conflict became more obvious" when counsel learned that "the other driver's insurance company denied liability due to Ms. Watson's alleged contributory negligence."  *Id.*  The Supreme Court explained: "[E]ven if Ms. King could have navigated that conflict at the outset by obtaining informed consent in writing from both clients: (1) she failed to do so; and (2) the conflict became unwaivable" (when she initiated suit against the driver while still representing her).  *Id.* at 506–507.

Additional guidance is found in an opinion of the Maryland State Bar Association's Ethics Committee, Ethics Docket No. 1981-27.[5]  *See Att'y Grievance Comm'n of Maryland v. Carithers*, 421 Md. 28, 54 n.14 (2011) (recognizing that ethics opinions are advisory and not

---

[5]    COMM. ON ETHICS, MD. ST. BAR ASS'N, *Ethics Docket No. 1981-27* (1981), https:// www.msba.org/site/site/content/Resources-and-Tools-Content/Ethics-Opinions/1981/1981-27.aspx [https://perma.cc/UQ87-F8MX].

binding, but may nonetheless be persuasive, especially "where . . . case law and rules are silent

on a particular issue, or to shed light on a unique set of circumstances") (first quoting *Att'y*

*Grievance Comm'n of Maryland v. Gregory*, 311 Md. 522, 531–32 (1988); and then citing

*Att'y Grievance Comm'n of Maryland v. Potter*, 380 Md. 128, 159–60 (2004)); *see Bennett v.*

*Ashcraft & Gerel, LLP*, 259 Md. App. 403, 434 (2023) (discussing same). At issue here, the

Ethics Committee took up the following question:

> You stated that your law office represents two sisters, both of who were in the same motor vehicle as passenger and operator, when their vehicle was struck by an MTA bus. Both of your clients contend that the operator of the MTA bus caused the accident. You have filed a lawsuit against NTA on behalf of your clients - the two sisters. MTA contends that the vehicle, which your clients were in as operator and passenger, was at fault in causing the said accident.[6]

It then continued:

> You asked us for an Opinion as to whether you could ethically continue to represent both of your clients. The Committee on Ethics has determined that you cannot ethically continue to represent both of your clients, the passenger and the operator of the vehicle that was involved in the accident with the MTA bus.
>
> EC 5-14 provides:
>
>> Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.
>
> Under the facts of your case as set forth herein above, the interest of your passenger client is at odds with the interest of your operator client. It is reasonable to assume that either your operator client or the driver of the MTA bus was at fault in causing the accident. Thus, your passenger client may well have a cause of action against both your operator client and the driver

---

[6] *Id.*

of the MTA bus. Therefore, you must withdraw from representing your passenger client.[7, 8]

Caselaw from New York and New Jersey (as well as Pennsylvania) similarly support the existence of a conflict posed by the dual representation here.[9] By way of example, when considering a disqualification motion where plaintiffs' counsel represented both the driver and passenger of the same car related to injuries arising from a car accident, the Eastern District of New York summarized:

> Courts have applied the "well-established rule" that a lawyer may not concurrently represent a client with interests materially adverse to those of another client "specifically to concurrent representation of both the driver of an automobile involved in an accident as well as a passenger in the same automobile." *Cohen v. Strouch*, No. 10-cv-7828, 2011 WL 1143067, at *3 (S.D.N.Y. Mar. 24, 2011) ("Even where a passenger has *not* brought a claim against the driver of the car they were in at the time of an accident, a conflict arises from the concurrent representation of driver and passenger because there is the potential for such a claim."); *see also Shaikh ex rel. Shaikh v. Waiters*, 710 N.Y.S.2d 873, 875 (N.Y. Sup. Ct. 2000) (explaining that "an attorney who represents both plaintiff driver and plaintiff passenger has created a conflict of interest" and violated the disciplinary rules). Indeed, "[e]ven when the driver and passenger are family members and co-plaintiffs in an action, concurrent representation of these parties will result in a conflict of interest due to their differing interests." *Cohen*, 2011 WL 1143067, at *3 (citing *Sidor v. Zuhoski*, 690 N.Y.S.2d 637, 638–38 (N.Y. App. Div. 1999) and *Pessoni v. Rabkin*, 633 N.Y.S.2d 338, 338–339 (N.Y. App. Div. 1995)); *see also Ferrara v. Jordache Enters., Inc.*, 819 N.Y.S.2d 421, 422–23 (N.Y. Sup. Ct. 2006) ("The dual representation by one firm of a driver and passenger in an

---

[7] *Id.*

[8] While the court does not consider the following in ruling on the instant Motion, it bears mention that such an opinion is far from rare. *See, e.g.*, LA. ST. BAR ASS'N, *Opinion 08-RPCC-016* (2008), https://www.lsba.org/documents/Ethics/DriverGuestPassengerConflicts08016RPCC.pdf [https://perma.cc/JRK4-PBVS]; FL. BAR, *Opinion 02-3* (2002), https://www.floridabar.org/etopinions/etopinion-02-3/ [https://perma.cc /2R8S-7THB]; ILL. ST. BAR ASS'N, *Opinion No-93-09* (1994), https://www.isba.org/ethics/opinions/9309 [https://perma.cc/E9TG-7EJ7]; PHILA. BAR ASS'N, *Ethics Opinion 91-12* (1991), https://philadelphiabar.org/?pg=EthicsOpinion91-12 [https://perma.cc/HHN2-PGHN]; ME. BD. OF OVERSEERS OF THE BAR, *Opinion 21* (1981), https://www.mebaroverseers.org/attorney_services/opinion.html?id=89522 [https://perma.cc/R5ZT-NQ3A].

[9] As Defendant notes, New York Rule of Professional Conduct 1.7 is similar to MARPC 1.7 in that it provides that a lawyer shall not represent a client where the representation includes representing different interests or where there is a significant risk that the lawyer's professional judgment will be adversely affected by other interests. NEW YORK RULE 1.7(a); MD. RULE 19-301.7(a). New York's Rule 1.7(b) is substantively identical to MARPC 1.7(b). New Jersey Rule of Professional Conduct 1.7 is substantively identical to MARPC 1.7(b). N.Y. RULE 1.7(b); MD. RULE 19-301.7(b).

> automobile involved in a collision constitutes a conflict of interest in violation of the disciplinary rules" because "where the driver is not joined as a defendant, the plaintiff passenger may well lose a valuable opportunity for recovery if in fact the other driver is exculpated."). This conflict arises, at least in part, due to the risk that the attorney might have to violate "either the ethical rule requiring an attorney to preserve a client's confidences, or the rule requiring an attorney to represent a client zealously" if he learned information about, say, the driver, relevant to his representation of the passenger. *Alcantara v. Mendez*, 756 N.Y.S.2d 90, 92 (N.Y. Sup. Ct. 2003).

*Genao de Valdez v. A. Duie Pyle, Inc.*, No. 24-CV-05376 (HG), 2024 WL 4710877, at *1 (E.D.N.Y. Nov. 7, 2024); *see Bostic v. United States*, No. 22-CV-5058 (DLI) (PK), 2026 WL 146709, at *1–2 (E.D.N.Y. Jan. 20, 2026) (noting "[i]t is well established that the interests of a driver of a vehicle that was in a car accident are adverse from the interests of a passenger that was in the same vehicle" and citing cases).  New York courts have held that this conflict of interest "exists even if the plaintiff-driver and plaintiff-passenger are married to each other or are family members." *Castillo Abreu v. Alvarez*, No. 21 CIV. 1641 (RER) (VMS), 2024 WL 5251985, at *2 (E.D.N.Y. Dec. 31, 2024) (citing cases).

New Jersey authority also supports such a conclusion.  *See McDaniel v. Man Wai Lee*, 419 N.J. Super. 482, 497 (App. Div. 2011) (noting "because of the conflict of interest inherent in the situation, that an attorney should not represent both the driver of a car and his passenger in an action against the driver of another car, unless there is a legal bar to the passenger suing his own driver"); *Matter of Shaw*, 88 N.J. 433, 441 (1982) (noting that "a lawyer cannot represent the interests of both the driver of a vehicle and his passenger in claims against the driver of the adverse vehicle" as the "conflict of interest in such representation is inherent"); *Nobrega v. Troy-Bilt, LLC*, No. CV 22-4204 (JXN), 2023 WL 8714113, at *5 (D.N.J. Dec. 18, 2023), *appeal denied, judgment aff'd*, 2024 WL 3549045 (D.N.J. July 25, 2024), *dismissed,* No. 24-2546, 2024 WL 5415754 (3d Cir. Sept. 5, 2024) (noting that "where both child and parent are injured in an automobile accident with a second driver, even though child and parent

both share the same primary goal of recovering from the defendants, a counterclaim for contribution also creates adverse interests between them, necessitating separate attorneys to represent each opposing interest . . . .") (citation modified and omitted). *See also Jedwabny v. Philadelphia Transp. Co.*, 390 Pa. 231, 235 (1957) (noting that while "there are instances where the conflicts of interest are so critically adverse as not to admit of one attorney's representing both sides," that circumstance did not exist where counsel concurrently represented a driver and guest passenger plaintiffs and defendant "joined" the driver as defendant).

Plaintiffs ask this court to disregard this caselaw because these states "apply[] an inherent adversity theory."[10] (ECF No. 28-1 at p. 4) (emphasis omitted). While it is not clear to the court that these jurisdictions subscribe to some discrete, identifiable "inherent adversity theory,"[11] or instead merely characterize the conflict at issue as "inherent,"[12] the court is nonetheless not persuaded to disregard these authorities. The existence of a conflict appears in accord with Supreme Court of Maryland's reasoning in *King*. While the *King* decision stemmed from an attorney disciplinary action (and certainly concerned more extreme circumstances of conflict), the court there nonetheless recognized a "'significant risk' of a conflict from the outset" in representing both the driver and injured passenger, and that the conflict "later 'became more obvious'" based on a finding of contributory negligence by an insurance company. *See King*, 491 Md. at 506–507, *supra*. The facts here are materially

---

[10] The court notes that Plaintiffs make no effort to direct the court to any authority to support their position beyond general caselaw that conflicts of interest cannot be speculative. Plaintiffs do not, for example, cite to any authority that no conflict (or risk of conflict) is posed by concurrent representation of a driver and passenger in a personal injury action against the other driver. Further still, Plaintiffs disregard the reasoning of *King* and fail entirely to respond to the cited Ethics Committee's Ethics Opinion on this issue. While Plaintiffs certainly do not bear the burden on the instant Motion, they fail to present a strong opposition due to their failure to cite any authority that addressed circumstances similar to those present here in their favor.

[11] The court located no case from a state or federal court, or secondary source, referring to an "inherent adversity theory." A basic Google.com search similarly revealed no results.

[12] For instance, a Texas court remarked upon "the conflicts inherent in an attorney's representation of both the driver and a passenger involved in a car accident and the dangers of failing to provide the proper disclosures" in a case involving malpractice and breach of fiduciary duty claims against former counsel. *Fitts v. Richards-Smith*, No. 06-15-00017-CV, 2016 WL 626220, at *1 (Tex. App. Feb. 17, 2016).

similar: Plaintiffs' counsel was aware of the Maryland State Police's finding that Plaintiff Reyes-Dominguez was liable for the accident; at that point, the conflict was "obvious." *See id.*

The court thus agrees that a conflict of interest exists under MARPC 1.7(a) with counsel's concurrent representation of both Plaintiffs where counsel plainly knew liability as to the accident was in dispute. Even assuming without deciding that Plaintiffs' interests are not presently "directly adverse" as contemplated by MARPC 19-301.7(a)(1), counsel's concurrent representation under the present circumstances, at a minimum, poses a significant risk that her representation will be materially limited. *See King*, 491 Md. at 506–507, *supra* (referring to the "significant risk" posed by the concurrent representation per MARPC 19-301.7(a)(2)).

## B. Continued Representation

In the presence of a conflict of interest, the question for this court becomes whether Plaintiffs' counsel may continue representation in accordance with MARPC 1.7(b). MARPC 1.7(b) provides:

> (b) Notwithstanding the existence of a conflict of interest under section (a) of this Rule, an attorney may represent a client if:
>
>> (1) the attorney reasonably believes that the attorney will be able to provide competent and diligent representation to each affected client;
>>
>> (2) the representation is not prohibited by law;
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the attorney in the same litigation or other proceeding before a tribunal; and
>>
>> (4) each affected client gives informed consent, confirmed in writing.

MD. RULE 19-301.7(b). The comments to MARPC 1.7 provide additional guidance:

> [2] Resolution of a conflict of interest problem under this Rule requires the attorney to: (1) clearly identify the client or clients; (2) determine whether a conflict of interest exists; (3) decide

11

> whether the representation may be undertaken despite the existence of a conflict, i.e., whether the conflict is consentable; and (4) if so, consult with the clients affected under section (a) of this Rule and obtain their informed consent, confirmed in writing. The clients affected under section (a) of this Rule include both of the clients referred to in subsection (a)(1) of this Rule and the one or more clients whose representation might be materially limited under subsection (a)(2) of this Rule.

.                 .                 .

> [14] Ordinarily, clients may consent to representation notwithstanding a conflict. However, as indicated in section (b) of this Rule, some conflicts are nonconsentable, meaning that the attorney involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When the attorney is representing more than one client, the question of consentability must be resolved as to each client.

*Id.* cmts. 2, 14.

Informed consent is defined as "the agreement by a person to a proposed course of conduct after the attorney has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." MD. RULE 19-301.0(g). On the topic, comment 18 to MARPC 1.7 provides:

> Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. See Rule 19-301.0 (g) (1.0) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved.

MD. RULE 19-301.7, cmt. 18.

Some jurisdictions have intimated or expressly held that a conflict like the one posed here may not be waived. *See, e.g.*, *Castillo Abreu*, 2024 WL 5251985, at *3 (noting that "district courts in the Second Circuit and New York courts have frequently disqualified attorneys from representing either the driver or the passenger in an automobile action when the

12

attorney previously represented both parties, even if the parties consented"); *McDaniel*, 419 N.J. Super. at 497 (noting that "because of the conflict of interest inherent in the situation, that an attorney should not represent both the driver of a car and his passenger in an action against the driver of another car, unless there is a legal bar to the passenger suing his own driver," and where no such legal bar exists "if a crossclaim or counterclaim is made by the other driver, a conflict of interest arises and the Supreme Court has advised . . . that the attorney should not be permitted to continue to represent either the driver or his passenger").

At least one other jurisdiction has rejected a hard and fast rule. *See, e.g.*, *Gustafson v. City of Seattle*, 87 Wash. App. 298, 303 (1997) (noting that "[p]otential conflicts between a driver and passenger are inherent in most auto collision cases," but rejecting a "per se rule," holding that "the attorney's ethical duties turn on the facts of each case" and "to represent both the passenger and driver in an auto collision case, an attorney must get each to consent after full disclosure if it reasonably appears that other parties might claim that the driver's negligence contributed to the passenger's injuries").[13]

Maryland authority does not squarely address whether the instant conflict is by its nature not waivable per MARPC 1.7(b). Indeed, the *King* decision leaves open the possibility that the conflict may be waived "by obtaining informed consent in writing from both clients."[14] 491 Md. at 506–507. Similarly, another opinion from the Maryland State Bar Association's Ethics Committee, Ethics Docket No. 1989-38, considered whether counsel may continue to represent both driver and passenger where liability was not in dispute, based on the plaintiffs'

---

[13] Washington State's Rule of Professional Conduct 1.7 is substantively identical to MARPC 1.7. WASH. RULE 1.7; MD. RULE 19-301.7(b).
[14] The court also notes that Ethics Docket No. 1981-27, *supra* footnote 5, contemplates continued representation but not continued concurrent representation.

assertions and separate independent evidence, but was later challenged by the other driver.[15] The Committee offered:

> Assuming that the clients have given full consent to your dual representation and are aware of the potential conflicts inherent in this representation as a result of your consultation with them as required by Rule 1.7, the Committee is of the opinion that your office may represent both "X" and "Y" in this case.[16]

Regardless, the court is persuaded that, upon the specific circumstances of the instant action, counsel's continued representation is not permitted pursuant to MARPC 1.7(b).

As Defendant Lopez notes, this action includes a claim brought by Plaintiff Sanchez-Ballesteros in her capacity as personal representative of the Estate of A.S. A personal representative is a fiduciary, "meaning that [she] must manage the estate's assets on behalf of the beneficiaries." *Tull v. Mieras*, No. CV GLR-19-2646, 2020 WL 13605075, at *3 (D. Md. Aug. 27, 2020). "In keeping with public policy, Maryland requires a personal representative 'to settle and distribute the estate of the decedent . . . as expeditiously as possible and with as little sacrifice of value as is reasonable under the circumstances.'" *In re Est. of Simonton*, No. 661, Sept. term, 2018, 2019 WL 3074118, at *4 (Md. Ct. Spec. App. July 15, 2019) (quoting MD. CODE ANN., EST. & TRUSTS § 7-101(a)).

Given Plaintiff Sanchez-Ballesteros' fiduciary duties as personal representation of the Estate of A.S., combined with apparent (disputed) evidence that Plaintiff Reyes-Dominguez was the cause of the accident, the instant conflict of interest poses undeniable barriers to counsel's ability to provide competent and diligent representation simultaneously to Plaintiff Sanchez-Ballesteros in her duty to endeavor to settle the estate expeditiously and "with as little sacrifice of value as is reasonable," *see* MD. CODE ANN., EST. & TRUSTS § 7-101(a), and to Plaintiff Reyes-Dominguez, whose potential liability appears central to the litigation. Based

---

[15] COMM. ON ETHICS, MD. ST. BAR ASS'N, *Ethics Docket No. 1989-38* (1989), https://www.msba.org/site/site/content/Resources-and-Tools-Content/Ethics-Opinions/1989/1989-38.aspx [https://perma.cc/E56S-6DCR].

[16] *Id.*

14

on that apparent tension, and where the court "is to resolve all doubts in favor of disqualification," *see Jarallah*, 123 F. Supp. 3d at 731, *supra*, the court finds disqualification is warranted.[17]

Moreover, and importantly, there is no evidence before the court that Plaintiffs' counsel "obtain[ed] informed consent in writing from both clients." *See King*, 491 Md. at 506, *supra*. MARPC 1.7(b)(4) specifically requires "each affected client gives informed consent, confirmed in writing"; consent of only one client is not sufficient. MD. RULE 19-301.7, cmt. 14 ("When the attorney is representing more than one client, the question of consentability must be resolved as to each client."); *Id.*, cmt. 18 ("Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client."). Where Plaintiffs' counsel has not shown (or offered to demonstrate) consent of each client, MARPC 1.7(b)(4) is plainly not satisfied.[18]

In sum, for the reasons set forth above, the court finds that Plaintiffs' counsel has a material conflict of interest in her concurrent representation of Plaintiffs in this case and that this conflict materially imperils the integrity of these proceedings. Therefore, Plaintiffs' counsel may not continue in her representation in accordance with MARPC 1.7(b). The court will therefore grant the Motion.

## IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant Lopez's Motion will be granted.

---

[17] Plaintiffs do not argue that the conflict of interest is ameliorated by separate counsel's representation of Reyes-Dominguez as a counter-defendant. Nonetheless, even had they so argued, the court would not be persuaded because the same problematic issue discussed above arises regardless—although certainly representing Reyes-Dominguez would pose an even greater risk of impediment to counsel's representation. *See Castillo Abreu v. Alvarez*, No. 21 CIV. 1641 (RER) (VMS), 2024 WL 5251985, at *5 (E.D.N.Y. Dec. 31, 2024) (noting that "[e]ven though Plaintiff Castillo Abreu has retained separate counsel to defend against the counterclaim, these opposing interests in the litigation still exist").

[18] Plaintiffs have not suggested any alternative request that they be permitted to limit counsel's representation to only one Plaintiff. The court therefore does not address same.

June 15, 2026                                             /S/
                                                 _____
                                                 Julie R. Rubin
                                                 United States District Judge